## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**HONEY CREST ACRES, LLC**      :   Case No.  2:22-cv-3943
51590 Rehm Road
St. Clairsville, OH 43950       :   Judge

     Plaintiff,               :   **<u>COMPLAINT</u>**

v.                              :   Action for Declaratory Judgment,
                    Trespass, Conversion, Unjust Enrichment,
**RICE DRILLING D, LLC**        :   Indemnification, and Breach of Contract
c/o
CT Corporation System           :   (Jury Demand Endorsed Hereon)
4400 Easton Commons Way STE 125,
Columbus, Ohio 43219            :

And                             :

**GULFPORT ENERGY**             :
**CORPORATION**
c/o                             :
National Registered Agents Inc.
4400 Easton Common Way STE 125  :
Columbus, Ohio 43219
                                :
     Defendants.              :

                                :

                                :

                                :

_____

     Plaintiff Honey Crest Acres, LLC ("Plaintiff") states as follows for its

Complaint:

**JURISDICTION AND VENUE**

1.      Plaintiff is an Ohio limited liability company, whose principal place of business is 51590 Rehm Road, St. Clairsville, Ohio 43950, that owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

2.      Defendant Rice Drilling D, LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222.

3.      Defendant Gulfport Energy Corporation is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 3001 Quail Springs Parkway, Oklahoma City, OK 73134.

4.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because: (1) Plaintiff and Defendants are citizens of different States, as detailed above, and (2) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is appropriate in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District and the subject leasehold is in this District.

**FACTUAL BACKGROUND**

**POINT PLEASANT FORMATION**

6.      Plaintiff reasserts every allegation contained in the foregoing paragraphs as if stated verbatim herein.

7.     In the past decade, the oil and gas production industry has implemented newer technologies to drill horizontal oil and gas wells into subsurface shale (rock) formations to extract oil and gas.

8.     In roughly 2011, large oil and gas companies, like Defendants, began drilling horizontal wells in eastern Ohio in what has been referred to as the "Utica/Point Pleasant Shale Play."

9.     The Utica Shale formation and the Point Pleasant formation are separate and distinct shale formations.

10.    In roughly 2012, the oil and gas industry specifically delineated a distinction between the Utica formation and the Point Pleasant formation.

11.    In 2012, the Ohio General Assembly passed S.B. 315 defining a "horizontal well" to be "a well that is drilled for the production of oil or gas in which the wellbore reaches a horizontal or near horizontal position in the Point Pleasant, Utica, or Marcellus formation and the well is stimulated" R.C. 1509.01(GG).

12.    In 2012, the Division of Geological Survey with the ODNR recognized that the Utica Shale formation is a separate and distinct formation from the Point Pleasant formation; that the Point Pleasant formation is underneath the Utica Shale formation; that the Point Pleasant formation is above the Trenton Limestone formation; and that the Point Pleasant formation is a primary reservoir of oil, natural gas, and other hydrocarbon products.

13.    The Division of Oil and Gas Resources Management ("DOGRM") of the ODNR regulates the oil and gas industry in Ohio and requires an oil and gas company

to submit a Well Completion Record (Form 8) after drilling and fracturing a horizontal well in Ohio.

14.     The Well Completion Record requires the oil and gas company to identify the specific formation(s) from which it is producing oil and gas from a particular well.

15.     The second page of Well Completion Record form identifies and lists 57 different strata formations in order of their depths.

16.     In 2012, DOGRM amended its Well Completion Record to separately identify the Point Pleasant formation.

17.     Thereafter, the Well Completion Record form indicates that the Utica Shale formation is different from and lies above the Point Pleasant formation.

18.     The DOGRM maintains an online data of wells, located at https://ohiodnr.gov/discover-and-learn/safety-conservation/about-odnr/oil-gas/oil-gas-resources/featured-content-3.

19.     That well database has the option to search for wells by "Producing Formation."

20.     That well database allows someone to select wells with the "Point Pleasant Formation" as the producing formation.

21.     That well database allows someone to select wells with the "Utica Shale" as the producing formation.

22.     Accordingly, in 2012, the oil and gas industry, the Ohio Legislature, and the ODNR all acknowledged the Point Pleasant formation is separate and distinct from the Utica Shale formation.

23.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on lithology and geologic characteristics.

24.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on stratigraphy.

25.     Defendant Gulfport admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations publicly filed under R.C. 1509.28 with the DOGRM.

26.     Defendant Rice admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations publicly filed under R.C. 1509.28 with the DOGRM.

## PLAINTIFF'S PROPERTY AND LEASE

27.     Plaintiff acquired about 33 acres, more or less, by virtue of Quit Claim Deed dated May 12, 2017, recorded in the Official Record Book 685, Page 288 ("Property"). A copy of that deed is attached as Exhibit 1.

28.     Plaintiff's immediate predecessor had leased the Property to Defendant Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations ("Lease"), with a Memorandum of Lease recorded in Official Record Book 446, Page 834. A copy of that memorandum of lease is attached as Exhibit 2.

29.   The Lease contains a confidentiality provision which prevents Plaintiff from filing it with this Complaint. That is why The Defendants should have a copy of the Lease within their possession. If required by Order of Court, Plaintiff will file the Lease under seal.

30.   Prior to executing the Lease, Defendant Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

31.   The Leases provides that the lessee has the right to develop and produce oil and gas from the top to the base of Marcellus Shale formation and Utica Shale formation, only.

32.   The Leases reserved to the lessor (now the Plaintiff) all of the oil and gas minerals from all other formations, including but not limited to, the Point Pleasant formation.

33.   Specifically, the granting clause of the Lease states:

Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) **in the formations commonly known as the Marcellus Shale and the Utica Shale,** underlying the land described below . . . Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from said **Marcellus Shale and Utica Shale** underlying the Leasehold
. . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale formations**
(emphasis added).

34.   In addition to the granting clause, the Lease also contains a reservation clause, titled Article I. Reservations - (a) Lessor's Reserved Rights, which states:

Lessor reserves all rights not specifically granted to Lessee in this Lease. **Lessor specifically reserves the rights to all products contained in any formation:** (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, **and (3) in all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves the right to drill through any leased shale(s) subject to Lessee approval which shall not be unreasonably withheld so as not to interfere with the Lessee's drilling operations, and a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose an immediate or foreseeable safety problem to Lessee and/or Lessor. Lessee agrees not to unreasonably interfere with the use and employment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land (emphasis added).

35. Moreover, the Lessee Covenants in Article XV states:

Any and all duties and obligations Lessee has are under implied covenants to benefit landowners and covenants under this lease. The Lessee will utilize current and future technologies to develop the property as operator sees fits [sic] after drilling an initial well, as a prudent operator all reasonable efforts to maximize the development of the resources associated with the Leased Premises in a prudent and efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

36. After executing the Lease, Defendant Rice knowingly trespassed when it drilled horizontal wells in and under Plaintiff's Property that are producing oil and gas minerals from the Plaintiff's respective Point Pleasant formation.

37.    After executing the Leases, Defendant Gulfport knowingly trespassed when it drilled horizontal wells in and under Plaintiff's Property that are producing oil and gas minerals from the Plaintiff's respective Point Pleasant formation.

## DRILLING ACTIVITY ON PROPERTY

38.    Defendant Gulfport has included certain portions of Property in its Dorsey East Unit where it drilled two horizontal wells: the Dorsey 210963 1B well and the Dorsey 210963 2A well ("Wells").

39.    Upon information and belief, Defendant Rice owns an interest in the Wells.

40.    Upon information and belief, Defendant Rice receives revenues from the sale of oil, gas and/or other hydrocarbon products produced from the Wells.

41.    Upon information and belief, Defendant Rice entered into a joint venture agreement with Defendant Gulfport to allow Defendant Gulfport the right to drill a horizontal well under Lease.

42.    Before drilling the Wells under Lease, Defendants Rice and Gulfport each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

43.    Before drilling the Wells under the Lease, Defendants Rice and Gulfport knew, or should have known, that the Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

44.    Notwithstanding their knowledge, Defendants Rice and Gulfport, drilled the Dorsey 210963 1B Well (API No. 34013210630000) into Plaintiff's Point

Pleasant formation and has illegally produced 13,005,053 MCFs of gas as of the second quarter of 2022, some or all of which was illegally produced from the Property.

45.     Notwithstanding their knowledge, Defendants Rice and Gulfport, drilled the Dorsey 210963 2A Well (API No. 34013210620000) into Plaintiff's Point Pleasant formation and has illegally produced 10,235,027 MCFs of gas as of September 30, 2018, some or all of which was illegally produced from the Property.

46.     The Well Completion Record forms for each of the Wells indicate that each of these Wells were drilled into and/or are producing oil and gas from Plaintiff's Point Pleasant formation.

47.     Defendants Rice and Gulfport do not have the right to drill into and produce Plaintiff's Point Pleasant formation under the Leases.

48.     Defendants Rice and Gulfport each negligently, willfully, wantonly, recklessly, and/or intentionally, physically drilled and intruded into formations beyond the boundaries of the leased Marcellus Shale formation and leased Utica Shale formation on Plaintiff's Property, and have illegally produced and continue to illegally produce oil, natural gas, and other hydrocarbon products from shale formations beyond the Marcellus and Utica Shale formations, including but not limited to, Plaintiff's Point Pleasant formations, without any agreement from Plaintiff, Plaintiff's predecessors-in-title, or any other lawful right to do so.

## CAUSES OF ACTION
## COUNT I – DECLARATORY JUDGMENT

49.     Plaintiff reasserts every allegation contained above as if stated verbatim herein.

50.     The Plaintiff's Lease's granting clause states:

Lessor, in consideration of the payments described herein and the
covenants and agreements hereafter contained, hereby leases and lets
exclusively to the Lessee all the oil, gas, minerals and their constituents
(not including coal) **in the formations commonly known as the
Marcellus Shale and the Utica Shale,** underlying the land described
below . . . Together with such exclusive rights as may be necessary or
convenient for the Lessee to explore for, develop, produce, measure, and
market production from said **Marcellus Shale and Utica Shale**
underlying the Leasehold
. . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale
formations**
(emphasis added).

51.     Plaintiff's Lease also states:

<u>Lessor's Reserved Rights</u>: **Lessor reserves all rights** not specifically
granted to Lessee in this Lease. Lessor specifically reserves the rights to
all products contained in any formation: (1) from the surface of the
Leased Premises to the top of the formation commonly known as the
Marcellus Shale, (2) in any and all formations below the base of the
Marcellus Shale to the top of the formation commonly known as the Utica
Shale, and (3) in **all formations below the base of the Utica Shale.**
Notwithstanding anything to the contrary, Lessee is specifically granted
the right to penetrate and drill through the shallower formations in order
to drill and produce the Leased Products and the Leased Premises.
Lessor also reserves a right of way on all lands granted hereunder and
the right to use the Leased Premises and any improvements thereon for
any and all other purposes, so long as that right of way does not cause
unreasonable interference with Lessee's operations or pose a safety
concern to Lessee. Lessee agrees not to unreasonably interfere with the
use and enjoyment of said land by Lessor and Lessor's family, agents,
employees, invitees, and guests and to comply with all other specific
provisions herein relating to the use of the land.

52.     Moreover, the Lessee Covenants in Article XV of the Lease states:

Any and all duties and obligations Lessee has are under implied
covenants to benefit landowners and covenants under this lease. The
Lessee will utilize current and future technologies to develop the
property as operator sees fits [sic] after drilling an initial well, as a
prudent operator all reasonable efforts to maximize the development of
the resources associated with the Leased Premises in a prudent and

efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

53.     Plaintiff and its predecessor did not grant or convey to Defendants Rice and Gulfport the right to produce oil, gas, or other hydrocarbons from above the top of the Utica Shale or below the base of the Utica Shale formation in the Lease.

54.     As set forth above, the Point Pleasant formation is a separate and distinct formation that lies below the base of Utica Shale formation.

55.     Defendants Rice and Gulfport have each represented in a Declaration of Pooling or Operating Agreement that they each have the right to drill their horizontal well and produce oil and gas from Plaintiff's Point Pleasant formation under the Lease.

56.     Under O.R.C. 2721.02, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

57.     Under O.R.C. 2721.03, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule,

ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

58.     A declaratory judgment action is proper if: (1) the action is within the scope of the Ohio Declaratory Judgment Act; (2) a justiciable controversy exists between adverse parties; and (3) speedy relief is necessary to preserve rights that may otherwise be impaired. *Freedom Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204.

59.     Defendants Rice and Gulfport each allege they have the right to produce oil and gas from below the base of the Utica Shale formation in the Point Pleasant formation under the Lease.

60.     A justiciable controversy exists between the parties as to whether Plaintiff or its predecessor reserved under the Lease the rights to its oil and natural gas from the Point Pleasant formation such that none of the Defendants have the right to drill into and produce oil, gas, or other hydrocarbon products from Plaintiff's Point Pleasant formations.

61.     Defendants Rice and Gulfport, continue to produce and receive revenues from the sale of oil, natural gas, and other hydrocarbon products from Plaintiff's Property, so speedy relief is necessary to preserve Plaintiff's rights.

62.     This Honorable Court should declare that: (1) Plaintiff or its predecessor reserved in the Lease the right to all products contained in any formation below the base of the Utica Shale, including, but not limited to the Point Pleasant formation, (2) the Point Pleasant formation is a separate and distinct formation from the Utica

Shale, and lies below the base of the Utica Shale formation; and (3) Defendants Rice and Gulfport, do not have the right under the Lease to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including, but not limited to, the Point Pleasant formation.

## COUNT II – TRESPASS

63. Plaintiff reasserts every allegation contained above as if stated verbatim herein.

64. Plaintiff and its predecessor did not lease, but reserved unto the lessors all rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbons from any formation below the base of Utica Shale formation, including, but not limited to, the Point Pleasant formation, and Plaintiff's predecessor reserved the right to drill through the two leased formations to produce oil, gas and other hydrocarbons from other formations.

65. Accordingly, the Lease does not grant the legal authority to any of the Defendants to drill into or produce oil, natural gas, or other hydrocarbons from the Point Pleasant formation.

66. At all times relevant hereto, Defendants Rice and Gulfport each knew, or should have known, that the Point Pleasant formation was (and is) separate and distinct from the Utica formation.

67. At all times relevant hereto, Defendants Rice and Gulfport each knew, or should have known, that the Lease did not permit any of these Defendants to drill

into the Plaintiff's Point Pleasant formations or to recognize revenues from the sale of those products illegally obtained.

68.     Despite their aforesaid knowledge, Defendants, Rice and Gulfport, each have intentionally drilled into and produced, and continue to produce, oil, gas, and/or other hydrocarbon products from Plaintiff's Point Pleasant formation.

69.     As to each of the Wells Defendants, Rice and Gulfport, each have drilled and hydraulically fractured their Wells below the base of the Utica Shale formation, including into the Plaintiff's reserved Point Pleasant formation, and have thereby intentionally physically invaded the Plaintiff's property without authorization.

70.     Defendants, Rice and Gulfport, each have produced, and continue to produce, oil, natural gas, and/or other hydrocarbon products from Plaintiff's Property from formations below the base of the Utica Shale formation without Plaintiff's agreement or consent.

71.     Defendants', Rice and Gulfport, drilling and fracturing into formations below the base of the Utica Shale formation constitutes a physical trespass into the Plaintiff's mineral estates.

72.     Defendants', Rice and Gulfport, production of oil, natural gas, and/or other hydrocarbon products from formations below the base of the Utica Shale formation constitutes a continuing trespass into the Plaintiff's mineral estates, specifically and without limitation, in their reserved formations which include the Point Pleasant formation.

73. Defendants', Rice and Gulfport, trespasses were and continue to be intentional, knowingly, willful, and unlawful, and have been done with a conscious disregard for the Plaintiff's property rights.

74. As a result of Defendants', Rice and Gulfport, trespasses, Plaintiff has suffered and will continue to suffer damages in an amount to be proven herein, including but not limited to the market value of the oil and gas unlawfully taken from Plaintiff's reserved mineral estates; the diminution in the value of the Plaintiff's mineral rights; and the loss of the right to develop and produce oil, natural gas, hydrocarbon products, and other minerals that existed and do exist in the Plaintiff's Point Pleasant formations and other formations below the base of the Utica Shale formation.

75. Defendants Rice and Gulfport as a result of their respective willful trespasses, are liable to Plaintiff for the full value of the oil, natural gas, and other hydrocarbon products removed from Plaintiff's Point Pleasant formations, without deduction of expenses incurred in exploring, producing, and transporting the natural gas or its hydrocarbon byproducts.

76. Regarding Defendant Gulfport, Plaintiff seeks all damages for claims which were not discharged in Defendant Gulfport's recent Chapter 11 bankruptcy.

## COUNT III- CONVERSION

77. Plaintiff reasserts every allegation contained above as if stated verbatim herein.

78. As set forth above, the Lease reserved unto the lessor all rights to drill,

explore, and/or produce oil, natural gas, or other hydrocarbon products from any formation below the base of Utica Shale formation.

79. Defendants, Rice and Gulfport, and each of them, have illegally removed oil, natural gas, and/or other hydrocarbons products from Plaintiff's Point Pleasant formation, and other formations.

80. Defendants', Rice and Gulfport, illegal removal of oil, natural gas, and/or other hydrocarbons from formations below the base of the Utica Shale formation from Plaintiff's Property constitute the wrongful exercise of dominion and control over Plaintiff's property to the exclusion of Plaintiff's rights.

81. Defendants', Rice and Gulfport, actions have been taken knowingly and with a conscious disregard of the Plaintiff's rights.

82. As a result of Defendants', Rice and Gulfport, actions, Plaintiff has been harmed in an amount to be proven at trial.

83. Regarding Defendant Gulfport, Plaintiff seeks all damages for claims which were not discharged in Defendant Gulfport's recent Chapter 11 bankruptcy.

84. Defendants, Rice and Gulfport, are also liable for the Plaintiff's attorney fees because "'compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered.'" *Fulks v. Fulks*, 95 Ohio App. 515 (4th Dist. 1953) (quoting, 53 American Jurisprudence, 897, Section 106).

## COUNT IV – UNJUST ENRICHMENT

85.     Plaintiff reasserts every allegation contained above as if stated verbatim herein.

86.     A benefit has been conferred upon each of the Defendants, Rice and Gulfport, by virtue of their respective illegal takings of Plaintiff's oil, natural gas, and/or other hydrocarbon products from formations below the base of Plaintiff's Utica Shale formation without the right to do so and the transporting of other parties' oil, natural gas, and/or other hydrocarbon products through formations below the base of Plaintiff's Utica Shale formation without the right to do so.

87.     Defendants, Rice and Gulfport, have knowledge of the benefits they have received and continue to receive from their respective illegal takings of Plaintiff's oil, natural gas, and/or other hydrocarbon products from formations below the base of Plaintiff's Utica Shale formation without the right to do so and the transporting of other parties' oil, natural gas, and/or other hydrocarbon products through formations below the base of Plaintiff's Utica Shale formation without the right to do so.

88.     Defendants, Rice and Gulfport, have retained the benefits from their respective illegal takings of Plaintiff's oil, natural gas, and/or other hydrocarbons from formations below the base of Plaintiff's respective Utica Shale formations and the transporting of other parties' oil, natural gas, and/or other hydrocarbon products through formations below the base of Plaintiff's Utica Shale formation.

89.     Regarding Defendant Gulfport, Plaintiff seeks all damages for claims which were not discharged in Defendant Gulfport's recent Chapter 11 bankruptcy.

90.     Under the circumstances, it would be inequitable and unjust to permit Defendants, Rice and Gulfport, to retain the benefits they have each received without compensating the Plaintiff for the oil, natural gas, and/or other hydrocarbon products the Defendants have illegally removed from formations below the base of Plaintiff's Utica Shale formations without a right to do so and the transporting of other parties' oil, natural gas, and/or other hydrocarbon products through formations below the base of Plaintiff's Utica Shale formation without the right to do so.

## COUNT V - FEES

91.     Plaintiff hereby reasserts all the allegations contained above in this Complaint as if fully rewritten herein.

92.     The Lease contains an Indemnity Clause which reads as follows:

**Indemnity:** Lessee agrees to indemnify, defend, and hold harmless Lessor and Lessor's heirs, successors, agents, assigns, not limited to any reasonable attorneys' fees, expert fees, and court costs) arising out of, incidental to or resulting from the Lessee's Operations and actions, and the Operations and actions of Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under Lessee's direction and control. Lessee's obligations hereunder shall survive the termination of this Lease.

93.     Said Indemnity agreement requires the lessee (Defendants Rice and Gulfport) to indemnify the Plaintiff for any expenses incurred as a result of lessee's actions.

94.     Plaintiff is requesting that all its litigation expenses, court costs, attorney fees, audit costs, expert fees, and other related costs be ordered to be paid by

Defendants Rice and Gulfport since it was its actions which caused this lawsuit to be filed.

## COUNT VI – BREACH OF CONTRACT

95.   Plaintiff hereby restates all the allegations contained above in this Complaint as if fully rewritten herein.

96.   The Lease requires the Lessee to pay the Lessor a certain confidential royalty percentage based on the gross proceeds received by the lessee from an unaffiliated third party at the point of sale, at a price no less than the prevailing price in the pricing area, for all the gas, oil, and any other salable materials produced from the well(s), without deduction for any costs including but not limited to gathering costs.

97.   Further, the Lease states, "[i]f as a result of such inspection Lessor discovers a deficiency in payment of royalties or other amounts due to Lessor under this Lease, Lessee will be liable for the amount of the deficiency plus interest at the maximum rate allowed by law. In the event that the deficiency exceeds 125% of the amount actually owed to Lessor, then Lessee shall pay all reasonable costs incurred by Lessor in conducting the inspection that led to discovery of the deficiency."

98.   In the alternative to the other Counts, upon information and belief, Defendants, Rice and Gulfport, have not properly paid Plaintiff royalties for the gas, oil, and any other salable materials produced from the Wells at the prevailing price, or without deduction for any costs in violation of the Lease.

99.     Upon information and belief, Defendant Rice is basing the gas price on which Plaintiff's royalties are paid on the TETCO M2 first of the month index, which is not the prevailing price.

100.     Upon information and belief, Defendant Rice is deducting from the gas price on which Plaintiff's royalties are paid certain gathering and other costs.

101.     Upon information and belief, Defendants Rice and Gulfport have breached the Lease by refusing and failing to properly pay royalty payments to Plaintiff as required under the Lease.

102.     As a result of Defendants', Rice and Gulfport, breach of lease, Plaintiff has suffered damages to be determined through discovery, including but not limited to underpayment of owed royalty payments and accrued interest.

103.     Regarding Defendant Gulfport, Plaintiff seeks all damages for claims which were not discharged in Defendant Gulfport's recent Chapter 11 bankruptcy.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests relief as follows:

a.     A declaration that: (1) Plaintiff's predecessor specifically reserved in the Lease the right to all products contained in any formation below the base of the Utica Shale; (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Defendants do not have the right under the Lease to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including in the Point Pleasant formation.

b.      The full value of the oil, natural gas and hydrocarbon products, and any other products removed from Plaintiff's formations below the base of the Utica Shale formation, without deduction of expenses incurred in exploring, producing, and transporting the oil, natural gas and hydrocarbon products, and any other products;

c.      Damages for the diminution of value of the Plaintiff's mineral estates, the loss of the right to lease, contract for, or otherwise develop and produce natural gas and other minerals that exist from formations below the base of the Utica Shale formation, given the Defendants' unlawful and continuous trespass into the formations below the base of the Utica Shale;

d.      As to Count VI, Defendants Rice and Gulfport have breached the Lease for not properly paying royalties to Plaintiff, and Plaintiff has suffered damage in the amount of unpaid royalties, applicable interest, and costs incurred by Plaintiff to discover the deficiency.

e.      Pre- and post-judgment interest;

f.      Reasonable attorneys' fees;

g.      Punitive damages;

h.      Equitable and/or injunctive relief for providing an accounting and notice to Plaintiff;

i.      Such other and further relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

*s/ Matthew W. Onest*      (Trial Attorney)
Matthew W. Onest (OH #0087907),
    Trial Attorney, of
Krugliak, Wilkins, Griffiths &
    Dougherty Co., L.P.A.
6715 Tippecanoe Road, 2C
Canfield, Ohio 44406
Direct Dial: 330-244-4498
Canfield Phone:  330-286-7065
Toll Free: 1-877-876-9958
Fax: 330-244-4498
monest@kwgd.com

*Attorneys for Plaintiff*

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all triable issues.

*s/ Matthew W. Onest*      (Trial Attorney)
Matthew W. Onest (OH #0087907),
    Trial Attorney, of
Krugliak, Wilkins, Griffiths &
    Dougherty Co. L.P.A.

*Attorneys for Plaintiff*