IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HONEY CREST ACRES, LLC, | : |
| | : |
| Plaintiff, | : Case No. 2:22-cv-3943 |
| | : |
| v. | : Chief Judge Algenon L. Marbley |
| | : |
| RICE DRILLING D, LLC & GULFPORT ENERGY CORPORATION | : Magistrate Judge Kimberly A. Jolson |
| | : |
| Defendants. | : |

**OPINION & ORDER**

This matter is before the Court on Defendants' Partial Motion to Dismiss (ECF No. 19). For the reasons set forth below, Defendants' Motion is **DENIED**.

### I. BACKGROUND

#### A. Factual Background

Honey Crest acquired its 33 acres of land by quitclaim deed on May 12, 2017. (ECF No. 1 at 5). The drilling rights to oil and gas from the Marcellus Shale and Utica Shale[1] formations were leased to Rice by the original owner of the land in 2013. (*Id.*). Defendants Rice and Gulfport Energy Corporation ("Gulfport") then drilled two horizontal wells into the Point Pleasant: the Dorsey 210963 1B well and the Dorsey 210963 2A well ("Wells"). (*Id.* at 8). These Wells produced in excess of 23 million cubic feet of gas from the Point Pleasant. (*Id.* at 9).

---

[1] The Marcellus Shale is a formation of sedimentary rock, dating back to the Middle Devonian Age (i.e., roughly 300 million years ago), which lies underneath much of the northern Appalachian Basin, including New York, Pennsylvania, eastern Ohio, West Virginia, and western Maryland. *See Marcellus Shale*, AM. PETROL. INST., https://www.api.org/oil-and-natural-gas/energy-primers/hydraulic-fracturing/marcellus-shale. The Marcellus Shale is notable for its abundance of natural gas, and production of natural gas from the Marcellus Shale through hydraulic fracturing has increased rapidly in the last fifteen years. *The Marcellus Shale, Explained*, STATEIMPACT PA., NPR, https://stateimpact.npr.org/pennsylvania/tag/marcellus-shale/. The Utica Shale is an even older, larger, and deeper formation of shale rock, which extends into the subsurface of Quebec, Ontario, Kentucky, and Tennessee. It, too, contains an abundance of recoverable gas and oil.

In Honey Crest's view, the lease agreement explicitly reserved Honey Crest's rights to natural resources produced from all geologic formations on the land other than the Marcellus Shale and Utica Shale, including, relevant here, "all formations below the base of the Utica Shale." (*Id.* at 6). Understanding the Utica Shale and Point Pleasant formations to be separate and distinct formations based on their geologic characteristics, Honey Crest therefore claims to have reserved rights to the Point Pleasant. (*Id.* at 5).

### B.  Procedural Background

Honey Crest filed its complaint with this Court on November 8, 2022, pursuing a declaratory judgment and damages for trespass, conversion, unjust enrichment, and breach of contract. (ECF No. 1). The parties submitted a joint motion to stay the case pending this court's decision on related oil and gas cases.[2] The stay, which was granted in January 2023, was lifted in July 2023. Defendants then filed their Partial Motion to Dismiss on July 21, 2023. (ECF No. 19). As Plaintiff properly responded and Defendants properly replied, the motion is now ripe for review.

### II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to evaluate the sufficiency of the complaint, and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Accordingly, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations

---

[2] At the time, the pending decisions were summary judgment motions in *TERA II LLC v. Rice Drilling D LLC*, No. 2:19-cv-2221 and the class certification motions in *J&R Passmore LLC v. Rice Drilling D LLC*, No. 2:18-cv-1587.

as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Although the court's primary focus should be on the allegations in the complaint, the court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal quotations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And though the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### III. LAW & ANALYSIS

Honey Crest's complaint alleges damages for trespass, conversion, unjust enrichment, and breach of contract, and requests a declaratory judgment. (ECF No. 1). Defendants seek to dismiss the declaratory judgment claim, the trespass claim, the conversion claim, and the unjust enrichment claim. (ECF No. 19). This Court will examine each in turn.

## A. Declaratory Judgment

Plaintiff seeks a declaration that the Utica Shale and Point Pleasant formations are separate geological formations and that they reserved to themselves the mineral rights in the Point Pleasant. Conversely, Defendants argue this Court should decline to hear Plaintiff's declaratory judgment claim because the claim serves no useful purpose in this case.

The Declaratory Judgment Act provides that a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). A district court has discretion to entertain a declaratory judgment action even where the court has subject matter jurisdiction. *Adrian Energy Assocs. v. Michigan Pub. Ser. Comm'n*, 481 F. 3d 414, 421 (6th Cir. 2007) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 277 (1995)). When deciding whether to exercise jurisdiction, courts must consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory action remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of the declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is more effective.

*Travelers Indem. Co. v. Bowling Green Pro. Assoc., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting *Grand Turk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Factor one—whether the declaratory judgment would help settle the controversy—and factor two—whether it would help clarify the parties' legal relationship—weigh in favor of this Court exercising jurisdiction over Plaintiff's claim. *Scottsdale Ins. Co.*, 513 F.3d at 557 ("[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue."). While resolution of the declaratory judgment would not settle the entire controversy, resolution of Plaintiff's declaratory judgment claim would settle the threshold,

4

and crucial, matter of whether Defendants acted outside the bounds of the lease. And no matter how this is resolved, a decision on the declaratory judgment serves a useful purpose because it would clarify the legal relationship between the lease parties. *In re Murray Energy Holdings Co.*, 637 B.R. 820, 824 (Bankr. S.D. Ohio 2022). If the answer to this question is that Defendants had the right to drill the Point Pleasant, the tort claims would be moot. To the contrary, if Defendants lacked authority to drill the Point Pleasant, certainty as to the parties' rights under the lease would allow the parties to proceed without risk of future litigation. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 663 (N.D. Ohio 2019) (finding a declaratory judgment useful in clarifying the parties' legal relations as to whether the phrase "Fruit is our 1st Ingredient" was a valid trademark because defendant who wished to use it, was curtailed in marketing and promotional endeavors by plaintiff's legal threats).

The parties agree that factors three and four are neutral, as there are no allegations that the claim is being used for procedural fencing or for a race for preclusion, that the factual questions at issue are so unique that comity is threatened, or that the issue would be better suited for state court.

Defendants argue that factor five—whether there is a more effective remedy—weighs against exercising jurisdiction here because the substantive causes of action are better suited to resolve the issues. Defendants are correct that to decide the tort claims, this Court must assess whether Defendants had the right to drill into the Point Pleasant—thereby addressing the same question at issue in the declaratory judgment. Indeed, the claims raised are so intertwined that judicial economy counsels against dismissing the declaratory judgment claim while adjudicating the claims for damages. Therefore, this Court would find no judicial-resource-saving benefit by opting not to exercise jurisdiction over the declaratory judgment. *See Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422–23 (6th Cir. 2007) ("When a plaintiff seeks relief

in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources."). Therefore, the *Grand Turk* factors weigh in favor of exercising jurisdiction over the declaratory judgment claim, and Defendants' Motion as it pertains to this issue is **DENIED**.

### B. Trespass

Under Ohio law, "[a] trespass is an interference or invasion of a possessory interest in property. A person or entity is liable to another for trespass if the person or entity intentionally enters upon land in the possession of another or causes a thing or third person to do so." *Abraham v. BP Exploration & Oil, Inc.*, 778 N.E.2d 48, 51 (Ohio Ct. App. 2002) (first citing *Crown Prop. Dev., Inc. v. Omega Oil Co.*, 681 N.E.2d 1343, 1350 (Ohio Ct. App. 1996) (internal citations omitted); then citing *Baker v. Shymkiv*, 451 N.E.2d 811, 813–14 (Ohio 1983)).

Here, the possessory property interest alleged by Honey Crest is the mineral rights to the Point Pleasant beneath the property. In the Complaint, Honey Crest states that Defendants "intentionally physically invaded the Plaintiff's Property without authorization." (ECF No. 1 at 14). This invasion, according to Honey Crest, was unauthorized because the oil and gas lease assigned to Rice, pursuant to which Rice drilled the horizontal wells, explicitly reserved to Honey Crest the rights to natural resources produced from geologic formations below the Utica Shale, including the Point Pleasant. (*Id.* at 6).

It has long been established that Ohio does not recognize absolute ownership by a landowner to everything below the surface of their properties. *Chance v. BP Chemicals, Inc.*, 77 Ohio St. 3d 17, 26, 1996-Ohio-352, 670 N.E. 2d, 985, 992 (Ohio 1996) (citing *Willoughby Hills v. Corrigan*, 29 Ohio St. 2d 39, 49, 58 O.O. 2d 100, 105, 278 N.E. 2d 658, 664 (Ohio 1972)). State

precedent, however, does acknowledge that a landowner's subsurface rights include "the right to exclude invasions of the subsurface property that actually interfere with [the landowner's] reasonable and foreseeable use of the subsurface." *Id.* On the matter of subsurface rights, Ohio courts conclude that for a plaintiff to recover for trespass, the plaintiff must demonstrate "some type of physical damages or interference with use." *Baker v. Chevron U.S.A. Inc.*, 533 Fed. App'x 509, 521–22 (6th Cir. 2013) (quoting *Chance*, 670 N.E.2d at 993). Here, Plaintiff alleges that Defendants' drilling technology interferes with its use because the technology is "designed to exert pressures underground such that Defendants cause hydrocarbons within the properties throughout the unit to leave their formations and migrate to Defendants' wellbores." (ECF No. 20 at 9, *see* ECF No. 19-1). In layman's terms, Plaintiff alleges that Defendants' fracking produces minerals from the surrounding acreage.

Trespass requires an unauthorized intentional act, and entry upon land in possession of another. *Georgetown of the Highlands Condo. Owners' Ass'n v. Nsong*, 2018-Ohio-1966, ¶ 36, 113 N.E.3d 192, 199–200 (Ohio Ct. App. 2018). Trespassing creates a presumption of willful conduct on the part of the trespasser and requires the defendant to prove by a preponderance of the evidence that he acted in good faith. *TERA, LLC v. Rice Drilling D, LLC*, 2023-Ohio-273 at ¶ 55, 205 N.E. 3d 1168, 1185 (Ohio Ct. App. 2023). Determining the existence of good faith is a question of fact "to be arrived at by the trier of facts from all the relevant material evidence adduced in the case." *Id.* Plaintiff here sufficiently pleads facts to support its claim for trespass and that Defendants did not enter the land in good faith.

Ohio recognizes direct and indirect trespasses. *Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*, 91 F.Supp.3d 940, 979 (S.D. Ohio Mar. 10, 2015) (applying Ohio law). Direct trespass occurs when the defendant intentionally goes on another's land. *See Rini v. Dyer*,

7

4th Dist. Scioto No. 07CA3180, 2008-Ohio-4172. Indirect trespass involves an "indirect invasion" of another's property. *Chance v. BP Chemicals, Inc.*, 77 Ohio St. 3d 17, 670 N.E.2d 985 (1996). As vibrations can be also considered an indirect trespass, *see Colegrove v. Fred A. Nemann Co.*, 1st Dist. Hamilton No. C-140171, 2015-Ohio-533, both types of trespass are present here. Defendants' horizontal wells enter Plaintiff's land, and Defendants' extraction process removed minerals from Plaintiff's land. So even though Defendants' wells are not physically located on Plaintiff's property, Defendants have indirectly trespassed through their technology which fracks their wellbore (creating fissures in rocks) and creates pressure sufficient to cause minerals from Plaintiff's land to migrate to Defendants' wells. As such, Plaintiff pleads sufficient facts to support its trespass claim and Defendants' Motion as it pertains to this issue is **DENIED**.

### C. Conversion

Conversion is the "exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96, 551 N.E.2d 172 (Ohio 1990). A plaintiff must prove: "(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 28, 62 N.E.3d 928, 934 (Ohio Ct. App. 2016). A conversion claim can only be asserted for personal property, not real property. *First Fed. Bank v. Angelini*, 2007-Ohio-6153, ¶ 8 (Ohio Ct. App. 2007). Here, however, Plaintiff properly highlights that minerals become personal property upon extraction from the subsurface. *Schlabach v. Kondik*, 7th Dist. No. 16 HA 0017, 2017-Ohio-8016, 98 N.E.3d 1048, ¶ 23 (citing *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 88–89, 113 N.E.2d 865 (1953). Plaintiff pleads that Defendants converted Plaintiff's

8

personal property on separate and distinct occasions each time Defendants extracted minerals from Point Pleasant.

Further, Defendants fail to challenge sufficiently Plaintiff's ownership or right to possession of the subsurface minerals at issue. Therefore, prong one—regarding plaintiff's ownership or right to possession of the property—has been established.

As part of prong two—defendant's conversion by a wrongful act or disposition of plaintiff's property rights—Defendants here argue that Plaintiff's conversion claim is barred by the Rule of Capture. Given oil's transient nature, "it is not confined by the artificial boundaries of surface tracts," *see R.R. Comm'n of Texas v. Rowan & Nichols Oil Co.*, 310 U.S. 573, 579 (1940), resulting in the necessary creation of the Rule of Capture to protect landowners who drilled oil from their properties that migrated naturally from a neighboring property. *Barnes v. Rsrv. Energy Expl.*, 2016-Ohio-4805, ¶ 29, 68 N.E. 3d 133, 141 (Ohio Ct. App. 2016) (citing *Nw. Ohio Nat. Gas Co. v. Ullery*, 68 Ohio St. 259, 272, 67 N.E. 494 (1903).). The Rule of Capture, however, encouraged an inefficient approach to drilling oil and gas by perversely incentivizing landowners to drill their own wells before it was captured by a neighbor, which caused reservoirs to lose pressure, leaving the oil unobtainable. *Paczewski v. Antero Res. Corp.*, 2019-Ohio-2641, ¶ 3, 2019 WL 2722600, at *1 (Ohio Ct. App. June 19, 2019). In a related case regarding this rule, this Court held that "the sparse case law on this topic recognizes a conversion claim predicated on natural resources that have been acquired by hydraulic fracturing that invades the plaintiff's property." *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2023 WL 4236670 at * 10 (S.D. Ohio June 28, 2023).

The purpose of conversion is to remedy the wrong visited upon the plaintiff for being deprived of her property, not the wrongful acquisition of the property. *See Ritter, Laber and Assoc.,*

9

*Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 20, 680 N.W.2d 634, 641 (N.D. 2004) (concluding that defendant's wrongful deprivation of plaintiff's excess oil and the proceeds from that oil gave rise to liability under the common law of conversion). Therefore, the circumstances presented here lead to the logical proposition that circumstantial evidence is "entirely reasonable for [the jury]" to consider when evaluating whether Plaintiffs were deprived of their property—an issue the Ohio courts sought to rectify through the creation of the common law doctrine of conversion. *Stratienko v. Cordis Corp.*, 429 F. 3d 592, 600–61 (6th Cir. 2005) (concluding that defendant's use of plaintiff's trade secret could be inferred from evidence of access to the trade secret and similarity of design because misuse of a trade secret could rarely be proved by convincing direct evidence). Plaintiff alleges it received royalties from the oil and gas extracted by Defendants, which at a minimum implies that Plaintiff's oil and gas may have been a part of that extraction, supporting its claim for disposition of its property rights. (ECF No. 1 at 20).

This Court now assesses the third prong—resulting damages—to establish whether Plaintiffs have sufficiently pled the conversion claim. The general rule for measure of damages in a conversion claim is the value of the property at the time of conversion. *Windward Enterprises, Inc. v. Valley City Dev. Grp. LLC*, 2019-Ohio-3419, ¶ 16, 142 N.E.3d 177, 183 (Ohio Ct. App. 2019). Plaintiffs here do not allege a dollar value, but may be able to calculate the damages owed at a later stage of litigation. To dismiss this claim prematurely would rob Plaintiffs of the opportunity to present a damages figure. Accepting Plaintiff's allegations as true and considering this Court's above finding regarding the implication that Defendants have sold some quantity of oil and gas from their property that may or may not have been theirs to sell, Plaintiff pleads enough to establish damages at this stage of litigation. Plaintiffs have successfully pled the elements of

conversion. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 903. Accordingly, Defendants' Motion as it pertains to this issue is **DENIED**.

### D. Unjust Enrichment

To prevail on a claim of unjust enrichment, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Padula v. Wagner*, 2015-Ohio-2374, ¶ 47, 37 N.E.3d 799, 813 (Ohio Ct. App. 2015) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (Ohio 1984)). Unjust enrichment "entitles a party only to restitution of the reasonable value of the benefit conferred." *FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 2019-Ohio-217, ¶ 12, 131 N.E.3d 397, 401 (Ohio Ct. App. 2019) (citing *St. Vincent Med. Ctr. v. Sader*, 100 Ohio App.3d 379, 384, 654 N.E.2d 144, 147 (Ohio Ct. App. 1995)). Here, the first and second elements of an unjust enrichment claim are met because Plaintiff conferred a benefit to Defendants by leasing the subsurface mineral rights and Defendants were aware of this benefit. The third element is met because Plaintiff pleads that it is unjust for Defendants to retain the benefits of the minerals they extracted without compensating Plaintiff. (ECF No. 1 at 17-18). Accordingly, Defendants' Motion as it pertains to this issue is **DENIED**.

### IV. CONCLUSION

For the reasons discussed above, Defendants Rice Drilling D and Gulfport Energy Corporation's Partial Motion to Dismiss (ECF No. 19) is **DENIED**.

**IT IS SO ORDERED.**

                                                                                    _____
                                                                                    **ALGENON L. MARBLEY**
                                                                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 18, 2024**