IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HONEY CREST ACRES, LLC,

                    **Plaintiff,**                    **Civil Action 2:22-cv-3943**

       **v.**                              **District Judge Algenon L. Marbley**
                                          **Magistrate Judge Kimberly A. Jolson**

RICE DRILLING D, LLC, et al.,

                    **Defendants.**

<u>**ORDER**</u>

Defendant Rice Drilling D, LLC's Motion to Compel (Doc. 49) is before the Court. For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

This diversity action, filed on November 8, 2022, concerns Plaintiff's property in Belmont County, Ohio, and its related oil and gas mineral rights. (Doc. 1 at ¶ 1). Plaintiff is a limited liability company that acquired approximately 33 acres by quit claim deed on May 12, 2017. (*Id.* at ¶¶ 1, 27). Plaintiff's predecessor leased the property to Defendant Rice Drilling D, LLC ("Rice") on December 31, 2013, "for the development of oil and gas minerals in two specified formations." (*Id.* at ¶ 28).

These land formations are the focus of extensive litigation in Ohio's state and federal courts. *See, e.g.*, *J&R Passmore, LLC, et al. v. Rice Drilling D, LLC, et al.*, Case No. 2:18-cv-1587 (S.D. Ohio Dec. 6, 2018) (Doc. 1); *TERA II, LLC v. Rice Drilling D, LLC, et al.*, Case No. 2:19-cv-2221 (S.D. Ohio May 28, 2019) (Doc. 1); *Senterra Limited v. Rice Drilling D, LLC, et al.*, Case No. 2:24-cv-3181 (S.D. Ohio June 10, 2024) (Doc. 1). According to Plaintiff, in 2011, "large oil and gas companies, like Defendants, began drilling horizontal wells in eastern Ohio in what has been referred to as the 'Utica/Point Pleasant Shale Pay.'" (Doc. 1 at ¶ 8). But Plaintiff alleges that "the Utica Shale formation and the Point Pleasant formation are separate and distinct shale

formations," and the distinction was "specifically delineated" by the oil and gas industry and others as early as 2012. (*Id.* at ¶¶ 9–12).

The distinction underlies this case. Plaintiff alleges that the lease between it and Rice provides "that the lessee, [Rice Drilling D, LLC], has the right to develop and produce oil and gas from the top to the base of [the] Marcellus Shale formation and Utica Shale formation." (*Id.* at ¶ 31). Based upon its definitions, Plaintiff says it reserved "all of the oil and gas minerals from all other formations, including . . . the Point Pleasant formation." (*Id.* at ¶ 32). Despite this, Defendants drilled horizontal wells in and under Plaintiff's property and are producing oil and gas minerals from the Point Pleasant formation. (*Id.* at ¶ 36–37; *see also id.* at ¶¶ 38–40 (identifying two horizontal wells, Dorsey 210963 1B and Dorsey 210963 2A, and alleging that Defendant Gulfport Energy Corporation drilled the wells, but Defendant Rice Drilling D, LLC owns an interest in them)). As a result, Plaintiff sues Defendants for trespass, conversion, unjust enrichment, and breach of contract and seeks declaratory, monetary, and injunctive relief. (*Id.* at ¶¶ 49–103, 20–21).

After Plaintiff filed this action, the Court stayed the case because of dispositive motions in related litigation and a separate bankruptcy proceeding. (*See* Docs. 12, 28). The Court lifted the stay on August 28, 2024, and the parties began conducting discovery. (Doc. 34 (order lifting the stay); Doc. 38 (scheduling order entered September 18, 2024)). The instant discovery dispute began brewing on October 18, 2024, when the parties exchanged initial disclosures. (Doc. 49 at 3; Doc. 49-3). At that time, Plaintiff identified Alexis Campbell/Bremner as its member and a witness who may have relevant information. (Doc. 49-3 at 2–3). Importantly, the initial disclosures did not mention her husband, Andrew Bremner. (*Id.*).

Then, on February 28, 2025, Plaintiff responded to Rice's discovery requests. (Doc. 49 at 3; Doc. 49-2). In those requests, Rice sought "documents or communications related to [Plaintiff's] or its agents' (1) 'operation of an oil, gas, or other hydrocarbon well,' (2) 'marketing of oil, gas, or other hydrocarbons,' or (3) 'drilling of an oil, gas, or other hydrocarbon well.'"

(Doc. 49 at 3; *see also* Doc. 49-2 at 19–20). Plaintiff provided the same response to each request:

> The husband of Alexis Bremner, Andrew Bremner, is an oil and gas expert and has drilled and operated oil/gas/hydrocarbons wells for Occidental Petroleum and California Resources Corporation. Plaintiff does not possess responsive documents or communications, but those are instead in the possession, custody, or control of a third party.

(Doc. 49-2 at 19–20).

Given this response, on April 2, 2025, Rice subpoenaed Mr. Bremner. (Doc. 49-4 at 2–3, 11–12). Rice requested documents and communications between Mr. Bremner and Plaintiff's agents and attorneys from January 1, 2020, to the present about (1) the drilling of an oil, gas, or other hydrocarbon well; (2) the operation of an oil, gas, or other hydrocarbon well; (3) an oil, gas, or other hydrocarbon lease; (4) Defendants; (5) this case; and (6) Plaintiff's contention that Mr. Bremner is an oil and gas expert. (*Id.* at 11–12 (Requests for Production Nos. 1–6)). Rice also requested documents and communications containing specific terms related to this case. (*Id.* at 12 (Request for Production No. 7)).

Plaintiff's counsel accepted the subpoena for Mr. Bremner and represents him for its purposes. (Doc. 49-1; Doc. 55 at 6; Doc. 49-5 at 9–10). On April 11, Mr. Bremner, through Plaintiff's counsel, broadly objected to the subpoena on three grounds. (Doc. 49-1 (not specifying which objections pertain to each request)). First, counsel refused to produce any materials between Mr. Bremner and Alexis Campbell, asserting their communications "are protected by the marital communications privilege." (*Id.* at 2). Second, counsel claimed that Mr. Bremner is Plaintiff's "non-testifying expert witness," and thus any communications or documents he possesses about this case are shielded by Federal Rule of Civil Procedure 26(b)(4)(D). (*Id.* at 2). Finally, counsel asserted that some of the requested materials are protected by attorney-client privilege because Mr. Bremner "is an agent of [Plaintiff]." (*Id.* at 3). Notably, this was the first time that Plaintiff identified Mr. Bremner as its agent or non-testifying expert.

3

The parties attempted to confer on the objections, though they quickly reached an impasse. (Doc. 49-5 (emails between counsel)). As a result, Rice filed a Motion to Compel on June 25, 2025, which the parties subsequently briefed. (Docs. 49, 55, 56). Upon review, the Court had questions. Although Plaintiff produced some emails showing that Mr. Bremner served as its agent since October 2022, it offered little proof of his status as Plaintiff's non-testifying expert. (Doc. 55 at 4–5; Doc. 55-3; Doc. 55-4). All Plaintiff provided was a declaration from counsel stating that "[o]n May 30, 2022, at 4:16 EST PM, Andrew Bremner reached out to several attorneys" in Plaintiff's counsel's firm "about forming a client-lawyer relationship with Plaintiff . . . relating to the underlying dispute and for purposes of initiating this litigation." (Doc. 55-5 at 2). On that day, according to the declaration, "Plaintiff's counsel began consulting with Andrew Bremner . . . in anticipation of litigation." (*Id.*).

The Court found this representation and timeline somewhat suspect. Consequently, the Court ordered Plaintiff to produce for *in camera* review: "(1) copies of the May 30, 2022, emails []; (2) Mr. Bremner's retention agreement, if one exists; and (3) any other documentation proving Mr. Bremner's formal employment as a consulting expert in this matter, such as payments from counsel for his consultative services." (Doc. 59 at 3).

On August 6, Plaintiff provided the May 30 emails and some additional information. For instance, Plaintiff submitted about 80 pages of other emails that, it says, proves Mr. Bremner's expert status. Plaintiff did not produce a retention agreement. Instead, it represented such an agreement does not exist and further clarified that Mr. Bremner is not being compensated for his work in this case.

The Court has reviewed these additional materials *in camera*, and Rice's Motion to Compel is ripe for review. (Docs. 49, 55, 56).

## II.     STANDARD

Rule 45 of the Federal Rules of Civil Procedure "governs discovery from non-parties, including the right to command a non-party to . . . produce documents." *Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316, at *4 (S.D. Ohio Apr. 17, 2015) (citing Fed. R. Civ. P. 45(a)(1)).  A non-party may serve written objections to the subpoena "before the earlier of the time specified for compliance [in the subpoena] or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).  If an objecting party claims that subpoenaed materials are privileged, it must "expressly make the claim" and "describe the nature of the withheld [materials] in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(i), (ii).  Ultimately, "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter."  *Taylor*, 2015 WL 1810316, at *4 (citing Fed. R. Civ. P. 45(d)(3)(A)(iii)).

## III.    DISCUSSION

As noted, Mr. Bremner initially objected to the subpoena because of privilege issues.  Now, he additionally contends that Rice seeks nonexistent or irrelevant information.  (Doc. 55 at 1, 6–8).  The Court disagrees.  As explained below, the discovery sought is relevant, and not all of it is privileged or protected from discovery.

### A.     Relevance

Up front, Rice contends the Court should not consider Mr. Bremner's relevance arguments.  According to Rice, because Mr. Bremner raised no relevance objections in his initial response to the subpoena, relevance "must be treated as undisputed."  (Doc. 56 at 2–3).

The Federal Rules and caselaw support this argument.  When a party does not timely object to a subpoena within the time specified by Rule 45, courts typically treat such objections as waived.  *Powell v. Time Warner Cable, Inc.*, No. 2:09-cv-600, 2010 WL 5464895, at *4 (S.D. Ohio Dec. 30, 2010) (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio

5

1999)).  "In unusual circumstances," however, and for good cause shown, courts may excuse the failure to timely object.  *Id.*  Unusual circumstances exist when "(1) the subpoena is overboard on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness's compliance prior to the time the witness challenged the legal basis for the subpoena." *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136–37.

No such circumstances exist here.  The subpoena is not overly broad on its face, and Mr. Bremner timely objected to Rice's subpoena based upon various privileges and Rule 26(b)(4)(D).  (Doc. 55 at 4–5, 6, 8–10; Doc. 49-1 (responding on April 11 to a subpoena dated April 2)).  Nothing in the record establishes good cause for his failure to raise additional relevance objections at that time.  *Cf. Univ. of Tenn. Res. Foundation v. Caelum Biosciences, Inc.*, No. 3:19-cv-508, 2022 WL 19403696, at *4 (E.D. Tenn. July 1, 2022) (rejecting a similar waiver argument, finding unusual circumstances excused the untimely relevance objection, and noting that the non-party included a boilerplate relevance objection in its initial response to the subpoena).

Plus, regardless of Mr. Bremner's arguable waiver, the information sought clearly falls within Rule 26's broad view.  While Plaintiff complains that Rice does not establish any responsive documents exist or that Mr. Bremner is even a fact witness in this case, these arguments are unconvincing.  (Doc. 55 at 3, 5).  Elsewhere, Mr. Bremner asserts he is Plaintiff's agent, an oil and gas expert, and the person who initiated the process of filing this lawsuit.  (Doc. 55 at 3–4, 13; Doc. 55-5 at 2–3).  Indeed, emails show he handles administrative and business tasks for Plaintiff.  (Doc. 55-3; Doc. 55-4).  What's more, Plaintiff identified Mr. Bremner as someone who would have responsive communications or documents in its responses to Rice's initial discovery requests on February 28, 2025.  (Doc. 49-2 at 19–20).  And Mr. Bremner never objected to the subpoena on the grounds that no responsive documents existed.  (Doc. 49-1).  Even in the briefing, Mr. Bremner does not deny the existence of responsive material.  (Doc. 55 at 3, 6–7 (saying only that Rice hasn't identified specific documents)).  Instead, he faults Rice for failing to identify what

specific documents exist.  (*Id.* at 6–7).

Time and again, courts have rejected similar arguments and ordered parties to search for responsive documents.  *See, e.g.*, *United States v. Carell*, No. 3:09-cv-445, 2011 WL 2078023, at *5–6 (M.D. Tenn. May 26, 2011) (stating that while parties cannot produce documents that do not exist, "[s]aying emails do not exist, however, is not the same thing as certifying that a search for such documents has been conducted") (also finding a representation that documents do not exist unpersuasive when the defendants also contended many of the documents weren't relevant); *Westfield Ins. Co. v. Milan 2000 Furnishings, Ltd.*, No. 11-cv-12773, 2012 WL 5258263, at *7 (E.D. Mich. Oct. 24, 2012) (finding a similar position "evasive" and noting that the party opposing discovery never specifically stated no other documents existed); *German v. Micro Electronics, Inc.*, No. 2:12-cv-292, 2013 WL 143377, at *5 (S.D. Ohio Jan. 11, 2013) (requiring a plaintiff to say no responsive documents exist and that she cannot collect the requested information and finding her excuse that she cannot remember or find information unpersuasive) (collecting cases).

So too here.  Mr. Bremner's agent status, the evidence provided of his involvement with Plaintiff's business operations, and Plaintiff's failure to deny outright the existence of responsive materials are enough for Rice to meet its burden of showing that responsive materials are likely out there.  *See, e.g.*, *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-cv-24, 2021 WL 1062553, at *10 (W.D. Ky. Mar. 19, 2021) (finding a plaintiff met its burden of showing more responsive documents likely existed by producing an email between plaintiff's and defendant's employees); *Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 298 (W.D. Ky. 2025) (rejecting an objection that the requesting party should "state specifically what documents they want to inspect" and noting that the defendant "would likely not know what documents exist until Plaintiff produces such documents"); *Garber-Cislo v. State Farm Auto. Ins. Co.*, No. 10-13301, 2011 WL 13217308, at *5–6 (E.D. Mich. Dec. 8, 2011) ("Rather than engaging in a debate about who knows which documents from which category exist, [Defendant] must conduct a reasonably diligent inquiry for responsive documents, rather than placing the burden on plaintiffs' counsel to

identify responsive documents that have been produced in other cases.").

Additionally, the information Rice seeks is relevant to legal and factual issues in this litigation. Importantly, "[t]he concept of relevance during discovery is necessarily broader than at trial." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *3 (S.D. Ohio July 23, 2010). Rule 26's plain language allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," even if that evidence is not admissible at trial. Fed. R. Civ. P. 26(b)(1). Courts have found that the scope of discovery encompasses even information related to "any of the myriad of fact-oriented issues that arise in connection with litigation." *Guinn*, 2010 WL 2927254, at *3.

Rice easily clears the low bar for Requests for Production 1–5 and 7 in the subpoena. (Doc. 49-4 at 11–12). As discussed, these requests seek communications and documents about Defendants, this litigation, and Mr. Bremner's and Plaintiff's drilling, operation, and leasing of oil, gas, and other hydrocarbon wells. (*Id.*). Rice's position "is that the parties intended to grant in the lease all materials in the 'formation commonly known as the Utica Shale.'" (Doc. 56 at 5). This phrase, it says, is ambiguous, and the requested discovery is relevant to determining the "common meaning of the phrase." (*Id.*). The Court agrees. Contrary to Plaintiff's argument, as Plaintiff's admitted agent, Mr. Bremner's communications and documents may shed light on how Plaintiff's members and employees refer to the land formations at issue in this case. (*Cf.* Doc. 55 at 7 (arguing Mr. Bremner is a "non-party," so his intent doesn't matter for the purposes of this lawsuit); *see also, e.g.*, Doc. 1 at ¶¶ 11–21 (pointing to industry happenings to show the common meaning of the phrase), 25 (highlighting an application filed by Defendant Gulfport Energy Corporation as an admission that the "Utica Shale and Point Pleasant formations are separate and distinct formations)). In fact, Plaintiff's member, Steven Campbell, admitted that Mr. Bremner has "knowledge of the terminology" relevant to the lease at issue in this case. (Doc. 56 at 11).

The fact that the original negotiator of the lease is deceased does not change the outcome. (Doc. 55 at 8 (arguing Bremner's knowledge is immaterial, since he didn't negotiate the lease)).

If anything, it further supports Rice's request.  Since Plaintiff's predecessor in title is dead (*id.*), Rice can obtain information on Plaintiff's understanding of the phrase only through its current agents' communications and documents showing how Plaintiff has referred to the Utica Shale and Point Pleasant Formation since the lease's existence.

Rice's request for materials related to Plaintiff's claim that Mr. Bremner is an oil and gas expert is also relevant—at least initially.  (Doc. 49-4 at 12 (Request for Production 6)).  As noted, Plaintiff did not identify Mr. Bremner as its agent in its initial disclosures.  (Doc. 49-3 at 2–3).  Nor did it disclose this fact in its discovery responses that first named Mr. Bremner and suggested he may have responsive documents.  (Doc. 49-2 at 19–20).  Indeed, not until Mr. Bremner faced specific discovery requests did Plaintiff assert that he is its retained oil and gas expert and its agent.  (Doc. 49-1).  Then, Plaintiff refused to provide any information or proof that it had retained Mr. Bremner for the purposes of this litigation.  (Doc. 49-5 at 9–10 (refusing to give "further details about the date and scope of retention" but saying he was retained "pre-suit in anticipation of litigation")).  These inconsistencies are enough to justify this request, at least for the purposes of ascertaining Mr. Bremner's exact role within Plaintiff's operations.  *See, e.g.*, *City of Fort Collings v. Open Int'l , LLC*, No. 21-cv-2063, 2022 WL 7584857, at *1–2 (D. Colo. Aug. 16, 2022) (noting the court ordered a party to provide a privilege log and engagement letters and the parties supplemented the record to support a party's claim that it retained a non-testifying expert); *In re Nw. Senior Hous. Corp.*, No. 22-30659, 2023 WL 1804625, at *4 (N.D. Tex. Feb. 6, 2023) (saying the court expected a party to provide testimony about how long a non-testifying expert "had worked as a litigation consultant, about its role in prior cases, or any other testimony regarding its qualifications and expertise" to meet its burden of showing the expert's role); *United States v. White*, No. 2:23-cv-1, 2024 WL 2164683, at *2–4 (E.D. N.C. May 14, 2014) (finding the lack of a written retention agreement complicated the court's analysis, but finding enough support in deposition testimony from an individual and sworn statements from attorneys to conclude the individual was a non-testifying expert).

9

In sum, the Court finds that Rice meets its initial burden of establishing relevance. The burden now shifts to Mr. Bremner and Plaintiff to show that the documents and communications are privileged or otherwise non-discoverable. *See Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136; *Abel v. Lyon*, No. 19-12556, 2020 WL 5629988, at *2 (E.D. Mich. Sept. 21, 2020); Fed. R. Civ. P. 26(b)(1), (5); Fed. R. Civ. P. 45(d)(2)(B)(i), (e)(2).

**B.    Choice of Law**

As a preliminary matter, the Court must address a choice-of-law question. In a diversity case like this, courts apply state law to privilege claims and federal law to work-product claims and claims brought under Federal Rule of Civil Procedure 26(b)(4)(D). *See* Fed. R. Evid. 501; *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citing *Jewell v. Holzer Hosp. Foundation*, 899 F.2d 1507, 1513 (6th Cir. 1990)); *Genesco, Inc. v. Visa USA, Inc.*, 302 F.R.D. 168, 170, 190–91 (M.D. Tenn. 2014). Therefore, the Court analyzes Mr. Bremner's marital communications and attorney-client privilege arguments under Ohio law and his non-testifying expert arguments under federal law. Because Rule 26(b)(4)(D)'s implications may decide whether Plaintiff must produce a privilege log, the Court begins there.

**C.    Rule 26(b)(4)(D)**

As noted, Plaintiff argues Mr. Bremner has been its non-testifying expert since May 30, 2022. (Doc. 55 at 12–13). After reviewing Plaintiff's minimal proof, the Court disagrees.

*1.    Standard*

Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure limits a party's ability to obtain discovery from another party's non-testifying expert. Courts disagree on whether this protection is an extension of the attorney work-product doctrine or a separate privilege entirely. *Compare Genesco, Inc.*, 302 F.R.D. at 189 (saying that the "non-testifying expert privilege is distinct from the work-product doctrine and the attorney-client privilege") (citing *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 30 (D. Mass. 2006)) *with In re OGGUSA, Inc.*, No. 20-50133, 2021 WL

10

2188927, at *4 (E.D. Ky. May 28, 2021) (describing Rule 26(b)(4)(D) as "an extension of the work product doctrine") (collecting cases); *see also Precision of New Hampton, Inc. v. Tri Component Prods. Corp.*, No. C12-2020, 2013 WL 2444047, at *4 (N.D. Iowa June 5, 2013) (discussing that "[c]ourts disagree over the relationship" between Rule 26(b)(4)(D) and the work-product doctrine). Regardless, the rule is clear that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D); *see also Trepel v. Roadway Exp., Inc.*, 40 F. App'x 104, 110 (6th Cir. 2002) ("Certainly, expert witnesses retained in anticipation of litigation, but not expected to testify, are protected from discovery under [Rule 26].") (citing *USM Corp. v. Am. Aerosols, Inc.*, 631 F.2d 420, 424 (6th Cir. 1980)).

In some cases, witnesses may "wear two hats: one as a specially employed expert in anticipation of litigation and one as an ordinary witness." *Jones v. Celebration Cruise Operator, Inc.*, No. 11-61308, 2012 WL 1029469, at *3 (S.D. Fla. Mar. 26, 2012) (citation modified). When this occurs, "[t]here is a legitimate concern that a party may try to immunize its employees who are actors or viewers against proper discovery by designating them experts retained for work on the case . . . . Courts should be exceedingly skeptical when employees who have otherwise discoverable information are designated experts." *Id.* at *2 (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2033 (3d ed. 2010)) (citation modified).

At base, though, the rule is construed narrowly, and the "party relying on [it] bears the burden of showing that it applies." *Dahl v. Turner*, No. 2:22-cv-72, 2024 WL 4005957, at *8 (E.D. Tenn. Mar. 12, 2024) (citing *In re OGGUSA, Inc.*, 2021 WL 2188927, at *4). If there is

11

"any ambiguity regarding the role played by a party's consultant in reviewing or creating documents . . . it should be resolved in favor of the party seeking discovery." *Id.* (citation modified).

### 2. In-House Experts Versus Employees

Rice's Motion raises an unsettled question: Can a party's employee, or even its agent, serve as an in-house, non-testifying expert? The Sixth Circuit has not squarely addressed the issue. But in courts across the country, two lines of cases have emerged.

The first firmly answers no. Based upon the plain language of the rule, the Advisory Committee Notes, and various sources defining experts as impartial figures, the courts in this camp reason that an employee cannot be "retained or specially employed" for the purposes of Rule 26(b)(4)(D). *See Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 406 (E.D. Va. 1975) ("It is evident from the definitions that an expert is expected to owe his allegiance to his calling and not to the party employing him. In order to be an expert one must be in a position to testify as an expert and not as a partisan."); *Matter of Kegg*, 116 F.R.D. 643, 644–45 (N.D. Ohio 1987) (noting the same); *Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.*, 109 F.R.D. 12, 15 (D. Neb. 1983) (saying an expert should be treated as ordinary witness if he acquires information not "in preparation for trial but rather because he was an actor or a viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit" (quoting Fed. R. Civ. P. 26(b)(4)(D), 1970 Advisory Committee Notes)); *see also* Fed. R. Civ. P. 26(b)(4)(D), 1970 Advisory Committee Notes (saying Rule 26(b)(4)(D) is "concerned only with experts retained or specially consulted in relation to trial preparation," not "an expert who is simply a general employee of the party not specially employed on the case").

Meanwhile, the second line of cases rejects a bright-line rule. In these, courts consider, on a case-by-case basis, whether an employee does "something more than simply the assignment of a current employee to a particular problem raised by current litigation." *In re Shell Oil Refinery*

12

("*In re Shell Oil Refinery I*"), 132 F.R.D. 437, 442 (E.D. La. 1990) (citation modified). More specifically, these courts look to whether an in-house employee was "directed to perform a particular task . . . outside the scope of his normal duties" and whether that work was performed in anticipation of litigation or to prepare for trial. *Tellabs. Ops., Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 385 (N.D. Ill. 2012) ("[T]he rule would not be operative unless it could be shown that the employee was given a project that he wouldn't ordinarily be working on."); *see also Seiffer v. Topsy's Int'l, Inc.*, 69 F.R.D. 69, 72–73 (1975) (deciding an employee was an expert under Rule 26(b)(4)(D) because he was specifically tasked with assisting in possible litigation); *In re Sinking of Barge Ranger I Cas. Near Galveston, Tex. On May 10, 1979*, 92 F.R.D. 486, 489 (S.D. Tex. 1981) (considering whether the experts and their information were acquired because of the prospect of litigation).

Ultimately, the Court does not need to pick a side today. Plaintiff has not shown that Mr. Bremner did anything more than one assignment for "a particular problem raised by current litigation." *In re Shell Oil Refinery I*, 132 F.R.D. at 442. In other words, under either view, the Court concludes Mr. Bremner is not an expert under Rule 26(b)(4)(D).

### 3.    Mr. Bremner's Status

As discussed, Plaintiff bears the burden of establishing that Mr. Bremner is its non-testifying expert. *Dahl*, 2024 WL 4005957, at *8 (citing *In re OGGUSA, Inc.*, 2021 WL 2188927, at *4). At the outset, the Court notes that Plaintiff provides nothing to support its contention that Mr. Bremner has oil and gas expertise. Plaintiff does not provide his qualifications, a declaration about his experience in the field, or even his resume. (Doc. 55). For the purposes of this analysis, however, the Court takes Plaintiff at its word that Mr. Bremner is an expert in this area.

Still, even with that allowance and the additional materials submitted *in camera*, Plaintiff fails to meet its burden. For instance, Plaintiff's counsel represents in the briefing that they began consulting with Mr. Bremner on May 30, 2022. (Doc. 55-5 at 2–3). Upon review, the May 30 emails say nothing to that effect. Further, Mr. Bremner does not have a retention agreement and

is not being compensated for his work in this case. Plaintiff does not even say that Mr. Bremner is a consultant in other oil and gas litigation.

Although the lack of compensation, consultative history, and written agreement are not dispositive, Plaintiff's other evidence does not move the needle either. *Cf. In re Shell Oil Refinery I*, 132 F.R.D. at 442 (finding two employees were in-house experts, even though they were not paid additional compensation or exclusively assigned to the case, because counsel engaged them to "perform specific tasks to help them defend the lawsuit"). Plaintiff submits 80 pages of emails between Mr. Bremner and its counsel for *in camera* review. These emails, Plaintiff contends, show that Mr. Bremner provided financial analysis and is therefore a non-testifying expert. Most of the emails, however, simply contain discussions that a business client and his counsel would have. (*See* Misc. Bremner Communications at 6, 7, 18, 25 (speaking from the perspective of Plaintiff's "fiduciary," i.e. its agent), 35 (asking if counsel needed documents and numbers an agent or fiduciary would have), 48 (same), 49 (same)). Plus, it appears that Mr. Bremner completed only one formal assignment for Plaintiff's counsel. (*Id.* at 70–73). Even Mr. Bremner seemingly questioned whether he should be labeled as an expert for the purposes of this work. (*Id.* at 73). Still more, Mr. Bremner did not conduct this analysis until September 2023—over a year after the May 30, 2022, date originally given by Plaintiff's counsel.

Even more important, Mr. Bremner's analysis is not outside the scope of his normal duties. Indeed, Mr. Bremner's work appears more like "business activities related to matters in issue," *In re Shell Oil Refinery*, 134 F.R.D. 148, 150 (E.D. La. 1990), or an "assignment . . . to a particular problem" raised by this litigation, *In re Shell Oil Refinery I*, 132 F.R.D. at 442, than the kind of special work covered by Rule 26(b)(4)(D). As represented by Plaintiff, Mr. Bremner is someone with oil and gas experience, and he is Plaintiff's agent. (Doc. 55 at 4–5, 6, 8–10, 12). He is also married to one of Plaintiff's members and regularly conducts business on Plaintiff's behalf. (*Id.* at 10–12; *see also* Doc. 55-3 at 6–7 (email from Alexis Campbell's account, written by "Andrew Bremner, on behalf of Alexis Campbell")). Fundamentally, financial or valuation analyses are not

14

beyond what is expected of a business's agent, especially when that business pursues litigation. *See, e.g.*, *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 2:13-cv-419, 2014 WL 11022097, at \*4 (D. S.C. May 5, 2014) (denying a protective order based upon Rule 26(b)(4)(D) because the employees' work was not "outside the scope of their regular employment duties nor were they given a project that they would not ordinarily work on"), *reconsideration denied*, No. 2:13-cv-419, 2014 WL 11022098 (D. S.C. June 16, 2014).  That Mr. Bremner completed a financial analysis for Plaintiff's counsel does not say much about whether he assisted as Plaintiff's agent and fiduciary or as a specially employed, non-testifying expert in oil and gas matters.  *Cf., e.g.*, *In re OGGUSA, Inc.*, 2021 WL 2188927, at \*6 ("Even if a reasonable fear of litigation arose at some point, such belief does not automatically transform [someone] into a consulting expert; there must be a formal intent to hire [them] as such at some point in the representation.").

The Court is also reluctant to find that simply valuing aspects of one's business transforms an employee or agent into a non-testifying expert exempt from discovery.  Such logic would mean that any executive, entrepreneur, or fiduciary could be deemed a non-testifying expert simply for being the keeper of the business's financial information.  (Doc. 56 at 2); *cf. Kiser v. Gen. Motors Corp.*, No. 98-3669, 2000 WL 1006239, at \*2 (E.D. La. July 19, 2000) (holding an employee was a non-testifying expert because he wasn't "merely conducting normal business activities").

Designating Mr. Bremner as a non-testifying expert would also contravene the purpose of Rule 26(b)(4)(D).  The rule protects against "the so-called free ride . . . where one party seeks discovery from another side's consulting expert to gain the benefit of his/her expertise without the cost of hiring him/her."  *ZCT Sys. Grp., Inc. v. FlightSafety Int'l*, No. 08-cv-447, 2010 WL 1257824, at \*5 (N.D. Okla. Mar. 26, 2010); *see also Genesco, Inc.*, 302 F.R.D. at 189 (stating the rule prevents "the unfairness of counsel benefiting from an adversary's retention and financing of an expert").  Here, Plaintiff is not paying for Mr. Bremner's services in this case, and Rice does not seek discovery on his expert analysis of financial issues in this case.  Rather, Rice seeks documents and communications showing Mr. Bremner's understanding of relevant issues like

Plaintiff's usage and understanding of the term "Point Pleasant Formation." (Doc. 49-4 at 11–12). In other words, Rice seeks Mr. Bremner's factual knowledge, not his expertise.

Even if the Court were to find that Mr. Bremner's work was covered by Rule 26(b)(4)(D), extraordinary circumstances justify discovery into his knowledge of the facts of this case. As noted, unlike other cases where courts found that employees were non-testifying experts, Mr. Bremner's knowledge of issues in this case goes far beyond whatever he learned to complete his singular analysis for Plaintiff's counsel. (Doc. 56 at 11); *see ZCT Sys. Grp., Inc.*, 2010 WL 1257824, at *4 (holding a corporate representative was not a non-testifying expert, in part, because he is "deeply involved in the factual evidence in this case"); *Giesecke & Devrient GmbH v. United States*, 174 Fed. Cl. 1, 19–20 (Fed Cl. 2024) (concluding specifics of an individual's employment and facts learned during that employment were not protected by Rule 26(b)(4)(D) because they are "inherently separate from [his] role as a non-testifying expert"); *cf. Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984, 991–92 (D.C. Cir. 1979) (noting the advisor was employed for litigation and knew only information he learned during that retention). And since Plaintiff's predecessor in title is dead, Rice can obtain certain information only from Plaintiff's current members and agents. (Doc. 56 at 11–12). At bottom, Plaintiff cannot shield its agent and the facts he knows from discovery simply by labeling him a non-testifying expert. *See Jones*, 2012 WL 1029469, at *3 (cautioning courts against allowing such expert designations).

On the record before it, the Court finds that Mr. Bremner is not entitled to Rule 26(b)(4)(D)'s protections for non-testifying experts, or, alternatively, that exceptional circumstances warrant the discovery Rice seeks. That does not mean that the analysis referenced in the emails are fair game, or that Mr. Bremner must produce every responsive communication he possesses. Indeed, attorney-client privilege or work-product doctrine potentially protect the communications. Instead, the Court finds that Mr. Bremner cannot completely avoid discovery under Rule 26(b)(4)(D). Instead, he must compile a privilege log and justify his decision to withhold responsive materials, like any business's agent or fact witness must do. Accordingly,

16

Rice's Motion on this point is **GRANTED**.

### D. Marital Communications and Attorney-Client Privilege

Next, Plaintiff asserts two privileges.  First, Plaintiff objects to producing Mr. Bremner's communications with Alexis Campbell under Ohio's martial communications privilege.  (Doc. 55 at 10–12).  For the remaining communications, Plaintiff raises attorney-client privilege.  (*Id.* at 8–10).  For the most part, the Court finds that Plaintiff's interpretation of the privileges is too broad.

#### 1. *Marital Communications Privilege*

Ohio's marital communications privilege provides that "[t]he following persons shall not testify in certain respects:"

> Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist[.]

Ohio Rev. Code § 2317.02(D).

In *Sessions v. Trevitt*, the Supreme Court of Ohio explained that the marital communications privilege is rooted in "public policy" and exists to "prevent[] the betrayal, by either husband or wife, of a trust or confidence reposed by one in the other *in privacy*."  39 Ohio St. 259, 265–66 (Ohio 1883) (emphasis in original).  In other words, the privilege exists to protect "the happiness of the marital state."  *Harrison v. Harrison*, No. 91AP-888, 1992 WL 40556, at *2 (Ohio Ct. App. Feb. 25, 1992) (citing *Sessions*, 39 Ohio St. at 259); *see also Diehl v. Wilmot Castle Co.*, 271 N.E.2d 261, 252–53 (Ohio 1971) (analyzing whether "the happiness of the married state" would be affected by admitting a husband's deposition into evidence); *Dick v. Hyer*, 114 N.E. 251, 253 (Ohio 1916) ("The evident purpose of this provision of the statute is to keep sacred and secret the confidential relations of husband and wife.").

The privilege, however, is not boundless.  Communications made in the "presence or

17

hearing of third parties" are "specifically excluded from the privilege." *Harrison*, 1992 WL 40556, at *2; *see also Kasapis v. High Point Furniture Co., Inc.*, Nos. 22758, 22762, 2006 WL 173131, at *6 (Ohio Ct. App. Jan. 25, 2006) (finding tax returns not protected by the marital communications privilege because they were also sent to their accountant).  As are "statements between spouses that are not confidential in nature" and "statements of a routine or business nature." *Harrison*, 1992 WL 40556, at *2.  According to Ohio courts, these communications are not entitled to protection "because they are unrelated to preservation of the marital relationship and do not contain an indicia of confidentiality."  *Id.* (citing *State v. Taylor*, No. 4280, 1988 WL 84239, at *3–5 (Ohio Ct. App. Aug. 10, 1988) (George, J., concurring)); *see also Sessions*, 39 Ohio St. at 266 (noting that the "*confidential* nature of the communication is a matter of the *intention* of the parties" and confidentiality is lost when couples speak in public); *Diehl*, 271 N.E.2d at 252 (finding the marital communications privilege did not apply to a driving experiment conducted by the spouses because those activities were "open to general observation" by those in the area); *Muehrcke v. Housel*, Nos. 85643, 85644, 2005 WL 2593551, at *4 (Ohio Ct. App. Oct. 13, 2005) (affirming trial court's denial of a husband's motion for a protective order and allowing a wife's deposition to proceed because not all the relevant matters fit "within the purviews of spousal privilege").

Here, Rice specifically requests "documents and communications exchanged between" Mr. Bremner and Plaintiff's agent—i.e. his wife, Alexis Campbell—about Defendants, this litigation, and Plaintiff's operation, drilling, and leasing of oil, gas, or other hydrocarbon wells.  (Doc. 49-4 at 11–12).  Plaintiff contends that these materials are protected by Ohio's marital communications privilege because they are not "the normal business of Plaintiff."  (Doc. 55 at 11).

The Court disagrees, at least in principle.  Notably, Plaintiff has not produced a privilege

18

log, making it impossible to determine the universe of communications at issue.  Even so, communications about Plaintiff's oil and gas operations, drilling, and leases clearly would be of a business nature.  Consequently, those communications are not privileged, as nondisclosure isn't necessary to protect "the happiness of the marital estate."  *Sessions*, 39 Ohio St. at 267; *Diehl*, 271 N.E.2d at 252; *Harrison*, 1992 WL 40556, at *2.

On the other hand, communications about Defendants and this litigation may be entitled to some protections.  *See, e.g.*, *Dick*, 114 N.E. at 251; *In re Carmean*, 153 B.R. 985 (S.D. Ohio 1993) (finding communications about personal finances privileged, but allowing statements about a debtor's gambling history, purchases, and conversations with his realtor and mother to be disclosed as communications involving third parties).  But as stated, whether the privilege applies cannot be determined without a privilege log summarizing the communications' contents and participants. This is because any communications made between Mr. Bremner and Alexis Campbell that included or were heard by third parties are not protected.  *Sessions*, 39 Ohio St. at 267 (saying communications "made in the hearing of a third person, even if his presence were not known to the parties until afterwards," are not privileged); *Dick*, 114 N.E. at 254 ("[W]hen a third person competent to be a witness is present, then the courts will inquire into the transaction just the same as if no confidential relation existed between husband and wife."); *Harrison*, 1992 WL 40556, at *2 (noting "communications made in the presence or hearing of third parties" are not privileged). Likewise, if Mr. Bremner and Alexis Campbell discussed Defendants in the context of business matters, those communications, too, would not be privileged.

At base, Plaintiff and Mr. Bremner interpret Ohio's marital communications privilege too broadly, and Rice's Motion to Compel is **GRANTED in part**.  Any communications between Mr. Bremner and Alexis Campbell that are of a business nature, included other persons, or were made

19

within hearing distance of others are not privileged. Mr. Bremner must produce those documents and communications in response to Rice's subpoena. If, after searching for responsive materials, Mr. Bremner finds communications concerning this litigation, Defendants, or other personal matters that are confidential and involved only him and his wife, he may withhold them and list them on a privilege log. *See, e.g.*, *Lawson v. Grange Mut. Cas. Co.*, No. 18002, 2000 WL 7311698, at *1–2 (Ohio Ct. App. June 9, 2000) (finding, in an insurance action related to an arson, conversations between spouses about a theft and potential fire were privileged); *Dick*, 114 N.E. at 253–54 (holding testimony about a wife's actions done by her and her husband in each other's presence alone were privileged, including testimony about signing a promissory note). That privilege log must be promptly produced to Rice, and the parties must confer on any differences that arise, subject to the case schedule outlined in Section E of this Order.

### 2. Attorney-Client Privilege

Plaintiff's final objection concerns attorney-client privilege. Because Mr. Bremner is Plaintiff's agent, Plaintiff asserts the Court should deny Rice's Motion as it pertains to "(1) all communications between Bremner and Plaintiff's legal counsel; and (2) all communications between Bremner and Plaintiff or its members that relay, discuss, or facilitate legal advice provided by counsel or that were made for the purpose of obtaining such advice." (Doc. 55 at 10).

While the Court finds that Mr. Bremner is Plaintiff's agent, Plaintiff overstates the scope of Ohio's attorney-client privilege. In Ohio, attorney-client privilege is governed both by statute and by common law. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 994 (Ohio 2005). "[Ohio Revised Code] § 2317.02(A) applies to communications sought during discovery or trial and prevents an attorney from testifying about communications made to the attorney by his client or about the attorney's advice to his client." *12312 Mayfield Road, LLC v. High & Low Little Italy, LLC*, 247 N.E.3d 1135, 1140 (Ohio Ct. App. 2024) (citations omitted). The common law, on the other hand, "reaches beyond the proscription against testimonial speech and protects

20

any dissemination of the information obtained from the confidential relationship." *Id.* The privilege applies "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie*, 824 N.E.2d at 995.

In business contexts, additional complications may arise. Generally, "[c]ommunications between an attorney and his client in the presence of a third person—where the third party is not an agent of either the client or attorney—are not privileged." *12312 Mayfield Road, LLC*, 247 N.E.3d at 1141. And communications "between non-attorney corporate employees" are privileged only "where the communications were made for purposes of securing legal advice from counsel and relaying legal advice." *Jacobs v. Equity Tr. Co.*, No. 20CA011621, 2020 WL 7693996, at *3 (Ohio Ct. App. Dec. 28, 2020); *see also id.* ("In order for the attorney-client privilege to apply, there must be substantial proof that the dominant intent of the communications, which includes documents, between non-attorney employees was to obtain legal advice." (citations omitted)); *Waters v. Drake*, No. 2:14-cv-1704, 2015 WL 8281858, at *4 (S.D. Ohio Dec. 8, 2015) (saying that "certain communications among employees or officers of a corporate client which do not directly involve an attorney may be privileged," but only when the dominant purpose is to secure legal advice or information requested by counsel). Likewise, communications between a client's agent and an attorney are protected only "where the communication as made in confidence for the purpose of obtaining legal advice from the attorney." *12312 Mayfield Road, LLC*, 247 N.E.3d at 1141. "[S]imply copying an attorney on an email" does not make a communication privileged. *Id.* Nor is a communication privileged "when the dominant purpose . . . is a business decision and not legal advice." *Id.*

As stated, Plaintiff seemingly seeks to shield all communications between Mr. Bremner, Plaintiff's counsel, and Plaintiff's agents. (Doc. 55 at 10). Currently, the Court does not have enough information to determine whether those communications are privileged. Neither Plaintiff

nor Mr. Bremner has produced a privilege log. And neither has shown that the dominant purpose of every responsive communication was to obtain "legal advice or information requested by counsel." *Waters*, 2015 WL 8281858, at *4; *see also 12312 Mayfield Road, LLC*, 247 N.E.3d at 1141. Therefore, Rice's Motion is **GRANTED in part**. As previously stated, Plaintiff and Mr. Bremner must search for responsive documents and communications, produce a privilege log, and confer with Rice on any disputes that arise. The Court now addresses deadlines for doing so.

      **E.**     **Case Schedule**

Currently, discovery in this action is set to close on September 5, 2025, but given Rice's outstanding subpoena, that deadline is now impracticable. (Doc. 47). As such, the Court **EXTENDS** the discovery deadline to November 4, 2025, and the dispositive motion deadline to December 16, 2025.

Plaintiff and Mr. Bremner are **ORDERED** to respond to Rice's subpoena and produce a privilege log **within twenty-one (21) days of the date of this Order**. The parties are **ORDERED** to confer via telephone or video conference on any additional disputes that may arise. The Court anticipates **no further extensions** and expects the parties to work together efficiently and in good faith to meet these deadlines.

Further, the Court notes that Rice did not follow the Court's scheduling order or the Local Rules when filing this motion. Specifically, Rice filed the instant Motion without first requesting an informal conference with the Court. (Doc. 38 at 2 ("If the parties are unable to reach an agreement on any matter related to discovery, they are directed to arrange a conference with the Court.")); S.D. Ohio Civ. R. 37.1. The parties are **WARNED** that they must follow these procedures for any discovery issues that arise. Additionally, the Court will not hesitate to shift fees if the parties take unreasonable positions in future discovery disputes.

## IV.    CONCLUSION

Defendant Rice Drilling D, LLC's Motion to Compel (Doc. 49) is **GRANTED in part**. The Court finds that Mr. Bremner is not a non-testifying expert under Federal Rule of Civil Procedure 26(b)(4)(D), or alternatively, that exceptional circumstances justify the discovery Rice seeks.  Additionally, many of the requested communications between Mr. Bremner and his wife, Alexis Campbell, are not protected by Ohio's marital communications privilege.  Finally, the Court finds that Mr. Bremner is Plaintiff's agent, and as such, some of the materials Rice seeks may be protected by attorney-client privilege or work-product doctrine.

Plaintiff and Mr. Bremner are **ORDERED** to respond to Rice's subpoena and produce a privilege log **within twenty-one (21) days of the date of this Order**.  The parties are **ORDERED** to confer via telephone or video conference on any additional differences or disputes that may arise.

Finally, the Court **EXTENDS** the discovery deadline to November 4, 2025, and the dispositive motion deadline to December 16, 2025.  The Court anticipates **no further extensions** and expects the parties to work together efficiently and in good faith to meet these deadlines.

IT IS SO ORDERED.


Date:  August 13, 2025                                    /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE